IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY EUGENE SEGRAVES, | : | Civil No. 3:17-cv-0084 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| B. SMITH, SUPERINTENDENT, PA. SCI | : | |
| HOUTZDALE, PA STATE ATTORNEY | : | |
| GENERAL, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM[1]

## I.    Background

Petitioner Gary Eugene Segraves ("Segraves") files the instant petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from the Judgment of Sentence

entered on June 30, 2011, in Court of Common Pleas of Lycoming County criminal case

CP-41-CR-0000548-2009, following convictions for twelve counts of rape of a child less

than 13 years old and a multitude of related offenses.

For the reasons set forth below, the petition for writ of habeas corpus, which  is

governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132,

110 Stat. 1214, April 24, 1996 ("AEDPA"), will be denied.

---

[1]    This matter has been reassigned to the undersigned upon the death of the Honorable James
M. Munley.

II.   <u>State Court Factual and Procedural Background</u>

The relevant facts and elaborate procedural history set forth below are extracted from the Superior Court of Pennsylvania's February 16, 2016 decision considering the Commonwealth of Pennsylvania's appeal of an order granting Segrave's petition pursuant to Post Conviction Relief Act ("PCRA"), 42 PA.C.S.A. §§ 9541-9546, awarding him a new trial:

> On March 12, 2009, Appellee was charged with twelve counts of rape of a child less than thirteen years of age [n.1 18 Pa.C.S.A. § 3121(c)], endangering the welfare of a child, [n.2 18 Pa.C.S.A. § 4304(a)(1)], and a multitude of other related offenses arising from the sexual abuse of his stepdaughter, B.H. (*See* Trial Court Opinion, 12/13/11, at 1). The abuse occurred over a two-year period, from approximately January 2006 until January 2008, while B.H. was between the ages of eleven and thirteen years old. (*See id.*). Appellee's wife and B.H.'s mother, M.S., was charged with corruption of a minor and endangering the welfare of a child in connection with the abuse, for failing to take measures to protect B.H. from Appellee after she learned of the allegations. (*See* PCRA Court Opinion, 6/02/15, at 1).
>
> On August 31, 2010, Appellee and M.S. proceeded to a jury trial as codefendants. (*See* Trial Ct. Op., 12/13/11, at 1). The jury found both parents guilty of endangering the welfare of child, but was unable to reach a unanimous verdict on the remaining charges. (*See* PCRA Ct. Op., 6/02/15, at 1). The trial court granted a mistrial with respect to the remaining charges. (*See id.*).
>
> A second jury trial was held on January 19–21, 2011. [n.3 B.H. was sixteen years old at the time of the second trial.] (*See* N.T. Trial, 1/19/11, at 42)]. (*See* Trial Ct. Op., 12/13/11, at 1). After jury selection, but before the trial commenced, the Commonwealth *nol prossed* the remaining corruption of a minor charge against M.S.; therefore, only Appellee proceeded to trial. (*See* PCRA Ct. Op., 6/02/15, at 1–2). Appellee's defense centered on the theory that B.H. fabricated the rape allegations because she wanted to be removed from his home, and move into the home of her biological father. (*See* N.T. Trial, 1/19/11, at 91–92, 101–02; PCRA Ct. Op., 1/21/15, at 4). At the conclusion of trial, the jury found Appellee guilty of twelve counts of rape of a child less than

thirteen years of age; six counts of rape by forcible compulsion; three counts of involuntary deviate sexual intercourse; seven counts of aggravated indecent assault of a child; one count of unlawful contact with a minor; eighteen counts of statutory sexual assault; one count of corruption of a minor; and twenty-five counts of indecent assault. (See Trial Ct. Op., 12/13/11, at 1–2).

On June 30, 2011, the trial court held a sentencing hearing at which it stated that the evidence of Appellee's guilt was "overwhelming" and noted as significant the:

> undisputed [medical expert] testimony that [B.H.] had suffered a penetrating wound to her hymen [and] that this could only have happened the way she alleged it to happen. It couldn't have happened through any other way. There wasn't contrary medical evidence, there wasn't contrary evidence of her undergoing some sort of massive injury that would have caused it. There wasn't even contrary evidence that she would have been engaged in an activity that might have caused it....

(N.T. Sentencing, 6/30/11, at 64–65). The court designated Appellee a sexually violent predator (SVP), and sentenced him to an aggregate term of not less than seventy-one nor more than 142 years' incarceration, followed by five years' probation. (*See id.* at 34; *see also* Sentencing Order, 6/30/11, at unnumbered page 4).

Appellee filed a direct appeal, and this Court affirmed the judgment of sentence on December 20, 2012. (*See Commonwealth v. Segraves*, 64 A.3d 29 (Pa.Super.2012) (unpublished judgment order)). Our Supreme Court denied Appellee's petition for allowance of appeal on October 23, 2013. (*See Commonwealth v. Segraves*, 77 A.3d 1260 (Pa.2013)). The United States Supreme Court denied his petition for writ of certiorari on April 7, 2014. (*See Segraves v. Pennsylvania*, 134 S.Ct. 1793 (2014)).

On March 12, 2014, Appellee filed the instant PCRA petition. [n.4 Appellee filed his PCRA petition while his direct appeal was pending before the United States Supreme Court and, thus, the petition was premature. *See Commonwealth v. Leslie*, 757 A.2d 984, 985 (Pa.Super.2000) (noting "[a] PCRA petition may only be filed after [a petitioner] has waived or exhausted his direct appeal rights") (citation and emphasis omitted). Nevertheless, because the PCRA court did not act on the petition, other than to appoint counsel, until after Appellee's direct appeal terminated, we decline to vacate the PCRA court's order on this basis.

*Cf. id.* at 986 (vacating order and remanding for further proceedings where PCRA court improperly proceeded on merits of petition during the pendency of direct appeal).].

\*\*\*

On January 21, 2015, the PCRA court entered its opinion and order granting Appellee's PCRA petition and awarding him a new trial on all charges, except the endangering the welfare of a child charge, which he was convicted of at the first trial. (*See* Order, 1/21/15). This timely appeal followed. [n.6 Pursuant to the PCRA court's order, the Commonwealth filed a timely concise statement of errors complained of on appeal on February 13, 2015. *See* Pa.R.A.P.1925(b). The court entered an opinion on June 2, 2015.].

*Com. v. Segraves*, No. 181 MDA 2015, 2016 WL 617167, at *1–3 (Pa. Super. Ct. Feb. 16, 2016).  The Pennsylvania Superior Court ("Superior Court") concluded that the PCRA court erred as a matter of law by granting Segraves a new trial based on ineffective assistance of counsel.  (*Id.* at *5).  The Superior Court reversed the order and reinstated the Judgment of Sentence.  (*Id.*).  Segraves filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court; the court denied the petition on July 7, 2016.  (Doc. 9, p. 3; Doc. 16, p. 121).

Thereafter, Segraves filed the instant timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

III.   <u>Habeas Claims Presented for Review</u>

Segraves seeks habeas relief based on the following grounds:

A.     Ground One:  Did the state court err by denying the defence's [sic] motion to dismiss juror #11 from the jury panel, expecially [sic] after engaging in blatant juror misconduct by making contact with a witness, thus denying the Petitioner a fair and impartial trial?

4

B.  Ground Two:  Was trial counsel ineffective for failing to call witness M.M. to the stand and the appellate court erred by overturning the lower court's decision for a new trial?

C.  Ground Three:  Trial counsel was ineffective for not submitting a pre-trial motion for the testimony of Ken[t] Baldwin, stating the prosecution breached 42 Pa.C.S. § 5945 and actively used the relationship with the alleged victim to further the aims of their case?[2]

D.  Ground Four:  Did the state deny the Petitioner's right to due process when it denied a motion for a mistrial prior to the commencement of trial, as Petitioner was unfairly prejudiced during jury selection?

E.  Ground Five:  Did the state court abuse its discretion by denying the motion for a mistrial as a result of statements made by the Assistant District Attorney during closing arguments?

F.  Ground Six:  The Commonwealth erred by denying the defendant to fully present his case and defense by:

a)  Denying admittance of videos to support Petitioner's defense, as prejudicial and cumulative, thereby denying the opportunity of presenting his case;

b)  Denying the Petitioner from presenting character witnesses to testify to the Petitioner's truthfulness, thereby denying the opportunity of presenting his case and defense.

(Doc. 1, pp. 8, 9,11, 13, 15, 16).

## IV.  Legal Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for

---

[2]  Segraves erroneously identifies B.H.'s school counselor as Ken Baldwin.  (Doc. 8, p. 27; Doc. 17, p. 126).  Baldwin testified at Segraves' first trial.  (Doc. 17, pp. 126-130).

a prisoner to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411

U.S. 475, 498-99 (1973).  28 U.S.C. § 2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.  Section 2254 sets limits on the power of a federal court to grant an

application for a writ of habeas corpus on behalf of a state prisoner.  *Cullen v. Pinholster*,

563 U.S. 170, 181 (2011); *Glenn v. Wynder*, 743 F.3d 402, 406 (3d Cir. 2014).  A federal

court may consider a habeas petition filed by a state prisoner only "on the ground that he is

in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  This limitation places a high threshold on the courts.  Typically, habeas relief will

only be granted to state prisoners in those instances where the conduct of state

proceedings resulted in "a fundamental defect which inherently results in a complete

miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair

procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994) (citations omitted).

Segraves' case is governed by the Antiterrorism and Effective Death Penalty Act of

1996, Pub.L.No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA").

## V.   Discussion

### A.   Exhaustion and Procedural Default

Before considering the merits of Segraves' grounds for relief, the Court must address

Respondents' contention that certain claims are unexhausted and procedurally defaulted.

Specifically, they assert that a portion of the claim raised in Ground One, the claim set forth

in Ground Three, a portion of the claim raised in Ground Four, and the claims contained in

Ground Six, are unexhausted and procedurally defaulted.  (Doc. 15, p. 10-12, 19, 20, 23).

Absent unusual circumstances, a federal court should not entertain a petition for writ

of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement

articulated in 28 U.S.C. § 2254(b).  Specifically, habeas relief "shall not be granted unless it

appears that . . . the applicant has exhausted the remedies available in the courts of the

State." 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845

(1999).  The exhaustion requirement is grounded on principles of comity to ensure that state

courts have the initial opportunity to review federal constitutional challenges to state

convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000); *Picard v. Connor*, 404

U.S. 270, 275–76 (1971).  The habeas statute codifies this principle by requiring that a

petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. §

2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete

round of the state's established appellate review process," before bringing them in federal

court.  *O'Sullivan*, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to

give the state courts a full and fair opportunity to resolve federal constitutional claims before

those claims are presented to the federal courts, . . .  state prisoners must give the state

courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established review process."); *see also Duncan v. Henry*, 513 U.S. 364,

365 (1995); *Picard*, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d

Cir. 1997). This requires that the claim brought in federal court be the substantial equivalent

of that presented to the state courts. *Picard*, 404 U.S. at 278; *see also McCandless v.

Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual

and legal substance" of claim to state courts).  Mere reliance of state and federal claims on

the same constitutional provision does not render the two claims substantially equivalent.

*See Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982); *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir.

1976).  Both the legal theory and the facts on which a federal claim rests must have been

presented to the state courts. *See Picard*, 404 U.S. at 277; *Brown*, 669 F.2d at 158–61.

"When a claim is not exhausted because it has not been 'fairly presented' to the

state courts, but state procedural rules bar the applicant from seeking further relief in state

courts, the exhaustion requirement is satisfied because there is 'an absence of available

State corrective process.' 28 U.S.C. § 2254(b). In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)." *McCandless*, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence—that was not presented at trial," showing that no reasonable juror would

have voted to find the petitioner guilty beyond a reasonable doubt.  *Hubbard v. Pinchak*, 378

F.3d 333, 339-40 (3d Cir. 2004).

We will address Respondents' arguments concerning the exhaustion and procedural

default of a portion of Ground One, Ground Three, a portion of Ground Four, and Ground

Six, seriatim.  (Doc. 15, p. 10-12, 19, 20, 23).

1.   *Ground One*

It is Respondents' position that the argument in Ground One, that "the suspicion of

impartiality came to the forefront when Juror # 11 was witnessed making hand gestures,

mouthing words, making obvious eye contact and went as far as giving the thumbs-up sign,

while nodding her head 'yes', near the end of the trial while sitting in the jury box implying

that this trial will not end in a mistrial like the first trial" has never been presented to state

court, and, consequently, is procedurally defaulted.  (Doc. 15, p. 11; Doc. 8, p. 14).

Segraves counters that the argument was raised on direct appeal as trial court error.[3]  (Doc.

18, p. 3).

On direct appeal, counsel phrased the Juror No. 11 issue as follows:  "The lower

court erred by denying the Defendant's motion to dismiss juror number 11 from the panel,

---

[3]   To the extent that he argues in his Traverse that he also raised the claim in the context of
ineffective assistance of counsel during his PCRA proceedings, that will be addressed *infra*. (Doc. 18, p. 3).

thus denied a fair and impartial jury, as the juror admitted to knowing the victim and other witnesses from school." (Doc. 17, p. 139). In the "summary of argument" section of the brief, counsel couched the argument as follows: "[T]he lower court abused its discretion by denying Mr. Segraves' motion to dismiss juror number 11, as she admitted that she went to school with Ashley Eyer, a Commonwealth witness. Had this information been made aware of at jury selection, Ms. Kramer quite possibly would have been stricken for reasons of impartiality. As it is essential for the jurors to be free from any prejudices and a right of Mr. Segraves to receive a fair trial, the lower court erred by denying the dismissal of Ms. Kramer." (*Id.* at 143, 144). The full argument is two paragraphs in length and minimally expands on the above. (*Id.* at 159). At no point is the issue of Juror No.11's alleged behavior of making hand gestures, mouthing words, making obvious eye contact, giving a thumbs-up sign, or affirmatively nodding her head, raised in the direct appeal brief.

Segraves fails to identify some objective external factor which prevented him from complying with the state's procedural rules in presenting this claim and he does not demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. Nor is there any argument or indication that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496. It therefore appears that the above claim is procedurally defaulted and federal review is barred.

However, in his Traverse, Segraves adds an ineffective assistance of counsel claim

to Ground One arguing that "any failure to raise this claim in the amended PCRA should be attributed to PCRA counsel because counsel abandoned the balance of the claims after the Commonwealth had the PCRA decision reversed on appeal." (Doc. 18, p. 3). He seeks to have the claim "considered a gateway claim to allow this Court to review the merits of the claim under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012)." (*Id.*).

*Martinez v. Ryan*, 566 U.S. 1 (2010), recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default. Specifically, *Martinez* holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9. To successfully invoke the *Martinez* exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," *id.* at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. *Id.* at 17; *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

To the extent that the claim contained in Ground One concerns trial court error, not trial counsel ineffectiveness, *Martinez* is not available to alleviate the procedural default of this claim. Alternatively, in seeking to have the claim considered in the context of an ineffective assistance of counsel, he argues that the procedural default should "be attributed to PCRA counsel because counsel abandoned the balance of the claims after the

Commonwealth had the PCRA decision reversed on appeal." (Doc. 18, p. 3). Because he seeks to have exhaustion excused based on PCRA counsel's failure to pursue this claim in the PCRA appeal proceedings, rather than the initial collateral review proceedings, *Martinez* does not apply. Federal review of this claim is precluded based on procedural default.

2.      *Ground Three*

Respondents also argue that Ground Three, "trial counsel was ineffective for not submitting a pre-trial motion for the testimony of Ken[t] Baldwin [("Baldwin")], stating the prosecution breached 42 Pa.C.S. § 5945 and actively used the relationship with the alleged victim to further the aims of their case" is procedurally defaulted as it has never been presented to the state courts. (Doc. 15, p. 20; Doc. 1, p. 11). Segraves concedes the procedural default of this claim noting that he initially raised the issue in his PCRA petition and that PCRA counsel failed to advance the claim in the amended petition. (Doc. 1, p. 13). As with the above argument, he asserts that the claim should be considered on the merits based on *Martinez v. Ryan*.

Ground Three contains two very different arguments. One argument focuses on trial counsel's alleged ineffectiveness in failing to file a pretrial motion compelling the testimony of Baldwin. (Doc. 18, p. 6). Also woven into this ground is an argument raising allegations of prosecutorial misconduct. (Doc. 8, p. 29).

a.      Prosecutorial Misconduct

Segraves argues that the prosecutor actively tried to use the relationship between

Baldwin and B.H. "to further the aims of the prosecution" and in doing so, breached the privilege carved out by 42 Pa.C.S.A § 5945.  (*Id.*).  Because this underlying otherwise procedurally defaulted claim concerns prosecutorial misconduct, not ineffective assistance of trial counsel, *Martinez* is unavailable to excuse the procedural default.  Federal review of alleged prosecutorial misconduct is barred.

### b.    Ineffective Assistance of Trial Counsel

Segraves also contends that the procedural default of the claim that trial counsel was ineffective in failing to compel the testimony of Baldwin, which he asserts was exculpatory under *Brady v. Maryland*, is directly attributable to PCRA counsel's failure to include the claim in his Amended PCRA petition in the initial collateral review proceedings.  As such, the claim necessitates a *Martinez* analysis.

A petitioner demonstrates that the underlying ineffective assistance of trial counsel claim has "some" merit by "show[ing] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Workman  v. Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019); *see also Martinez*, 566 U.S. at 13-14.  A petitioner demonstrates that post-conviction counsel's ineffectiveness caused the procedural default by showing that post-conviction counsel's performance was deficient under the first prong of the *Strickland v. Washington*, 466 U.S. 668 (1984) standard.  *See Preston v. Sup't Graterford, SCI*, 902 F.3d 365, 376 (3d Cir.

2018); *see also Workman*, 915 F.3d at 937–38.  Satisfaction of the first *Strickland* prong requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *Strickland*, 466 U.S. at 688.

Segraves' underlying claim is that trial counsel's failure to compel the testimony of Baldwin constituted ineffective assistance because Baldwin's testimony was exculpatory under *Brady v. Maryland*, 373 U.S. 83 (1963).  The testimony to which he refers was elicited by the prosecution during Segraves' first trial.  Baldwin, an outreach counselor,[4] testified that he reported to Montgomery Junior/Senior High School in February 2008 in response to a request for his services.  (Doc. 17, p. 126).  Upon arrival at the school, he was met by Mr. Prowant, the assistant principal.  (Doc. 8, p. 27; Doc. 17, p. 126).  On direct examination, Baldwin testified that on February 4, 2008, B.H. reported to him and Mr. Prowant that "some time prior to December of 2007 she had sexual relationships with her father – stepfather" and that the sexual contacts had stopped in December of 2007.  (Doc. 17, p. 126).

Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.  *Id.* at 87.  " '[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding

---

[4]   Baldwin was in the employ of Diakon, an organization that provides counselling services for certain schools in Lycoming County.  (Doc. 17, p. 126).

would have been different.' *Cone v. Bell*, 556 U.S. 449, 469–470, 129 S.Ct. 1769, 173

L.Ed.2d 701 (2009).  A reasonable probability does not mean that the defendant 'would

more likely than not have received a different verdict with the evidence,' only that the

likelihood of a different result is great enough to 'undermine[ ] confidence in the outcome of

the trial.'  *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)

(internal quotation marks omitted)."  *Smith v. Cain*, 565 U.S. 73, 75–76 (2012).  A three-part

test is employed in determining whether a *Brady* violation has occurred: (1) the evidence at

issue must be favorable to the defendant, either because it is exculpatory or impeaching in

nature; (2) the evidence must have been suppressed by the state either willfully or

inadvertently; and (3) prejudice must result from this suppression.  *Dennis v. Sec'y Dept. of*

*Corr.*, 834 F.3d 263, 284-85 (3d Cir. 2016) (*en banc*); *Banks v. Dretke*, 540 U.S. 668, 691

(2004)(citations omitted).

Segraves' *Brady* argument concerning is two-fold.  He first argues that Baldwin's

testimony, that B.H. informed him that the sexual relations with her step-father stopped in

December 2007, "was exculpatory in nature because it conflicted with the testimony of other

witnesses for the Commonwealth, *i.e.*, B.H. and Dr. Lewis [who testified that the injuries

happened two weeks prior to the February 2008 disclosure]" and, therefore, trial counsel's

failure to file a motion to compel Baldwin to testify at the second trial resulted in a *Brady*

violation.  (Doc. 8, pp. 27, 28).

Segraves mischaracterizes this testimony as exculpatory *Brady* evidence.  *Brady* holds that the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment.  The evidence he seeks to compel is not evidence withheld by the state.  Rather, it is evidence in the form of prior testimony which is accessible as a public record.  Because there is no viable *Brady* claim, the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel lacks some merit.  *Martinez* does not excuse the procedural default.

His second argument emanates from Baldwin's cross examination.  In response to questions posed by Kyle Rude, Esq. ("Rude"), Segraves' trial counsel, Baldwin testified that he met with B.H. approximately ten times beginning in 2006.  (Doc. 17, p. 127).  Rude's attempt to elicit additional information about these other sessions was met with an objection from the prosecutor, Mary Kilgus, Esq. ("Kilgus").  (*Id*.).  Kilgus argued that this information was privileged.  She pointed out that the direct examination was limited in scope to the February 4, 2008 session and emphasized that due to the presence of a third party, Mr. Prowant, the privilege did not apply to that particular interaction.  Rude acknowledged the applicability of the privilege but noted that it could be waived by either the student or a parent.  (*Id*.).

In considering the objection, the trial court cited the school personnel confidential communication privilege, which prevents such personnel from disclosing information obtained in the course of their professional duties in the context of a legal proceeding, trial

or investigation before any governmental unit, without the consent of a parent or guardian.[5]

(*Id.* at 127, 128).  The trial court observed that there was no indication that the privilege had

been waived and, consequently, sustained the objection.  (*Id.* at 128).  In doing so, the trial

court advised Rude that if he wanted Baldwin to testify about confidential communications

with B.H., the onus was on him to establish that the privilege had been waived.  (*Id.*).  The

parties agreed that while Rude explored whether the privilege had been, or would be,

waived by B.H.'s parent, Baldwin would remain under subpoena.  (*Id.*).

Immediately after the above exchange, Rude moved for a mistrial citing a *Brady*

violation.  (*Id.*).

MR. RUDE:          Your Honor, I want to put an objection on the record here and move to
                   dismiss the charges against Gary Segraves because there's a *Brady*
                   violation. We have evidence here that should have been turned over to
                   the defense, each defendant. There is exculpatory evidence, the fact
                   that she did not disclose these sessions with the counselor which she
                   had over two years, and that was never disclosed.

MS. KILGUS:        What counselor?

THE COURT:         What wasn't disclosed?

MR. RUDE:          Mr. Baldwin's sessions or anything about—

THE COURT:         How is that information within the Commonwealth –

MR. RUDE:          I don't know that, Your Honor, and that's the response I expect. It's –

MS. KILGUS:        I think he means -- I don't get records.

---

[5]     The parties agreed that the applicable privilege was the school counselor privilege set forth at
42 PA.C.S.A § 5945, not the sexual abuse counselor privilege.  (Doc. 17, p. 127).

THE COURT:        Let him finish his objection.

MR. RUDE:         My objection is because – not knowing what the
                  Commonwealth has, knowing that Marsha Barnhart
                  does a very good job investigating. If this had been
                  known to Marsha Barnhart and the prosecution or to the
                  Commonwealth and was not disclosed, then it's a *Brady*
                  violation.

MS. KILGUS:       What specifically?

THE COURT:        That's the question I want to ask. The information you're
                  saying that should have been disclosed to you is the
                  fact, if it's true, that the victim did not tell her counselor
                  any questions -- or did not tell her counselor anything
                  about being sexually assaulted.

MR. RUDE:         Right, and the lack of advising a counselor during this
                  time is, I believe exculpatory.

THE COURT:        Okay. How are you prejudiced by that?

MR. RUDE:         I'm prejudiced by it because, number one, the first time I
                  heard it was today on the stand.

THE COURT:        Well, you heard it yesterday when she testified.

MR. RUDE:         But—

THE COURT:        Plus it helps your case.

MR. RUDE:         Certainly. But obviously this is something that wasn't
                  disclosed. That's the motion I'm making.

MR. GARDNER:      I will join in that.

THE COURT:        I will deny that motion.

MR. RUDE:         So what are you allowing me to do right now with Mr.
                  Baldwin, if anything?

THE COURT:          What I'm suggesting is you can't -- her motion is
                    sustained with respect to the privilege. That means you
                    can't ask him questions about what was said in the
                    context of counseling at this point.

MR. RUDE:           I can just re-enforce the fact that she mentioned nothing
                    about this in the counseling she's already testified to.

THE COURT:          No, no, because he's still under privilege.

MR. RUDE:           So it's just out there.

THE COURT:          Her testimony is out there. He can't. I suggest what we
                    do right now, because I know you're going to want to call
                    him back –

MR. RUDE:           Yeah.

THE COURT:          -- is let him -- release him for today, and we'll recall him
                    at a later time, either tomorrow or the next day, after I
                    can get a handle on her argument about the witness.

MR. RUDE:           And if there is a motion to stop interlocutory appeal
                    obviously we need more than just her saying it. They've
                    got to demonstrate they can't move forward with their
                    case.

THE COURT:          I understand, and she might have a tough burden on
                    there in light of the prior testimony.

MR. RUDE:           Your Honor, can you then just excuse him for now and
                    call your next witness?

THE COURT:          Yeah.

(*Id.* at 129, 130).

Segraves argues that evidence of the other sessions to which Baldwin referred should have been turned over to the defense.  (Doc. 8, p. 28).  "Had this information been known to counsel, counsel could have used it for impeachment of the alleged victim during cross-examination." (*Id.*).  This argument wholly lacks merit.  It is patently obvious from the above exchange that such evidence was not known to the state.  Nor was the evidence available as it is clearly covered by the statutory privilege set forth in 42 PA.C.S.A § 5945, "Confidential communications to school personnel."  The statute provides:

> (a) General rule.--No guidance counselor, school nurse, school psychologist, or home and school visitor in the public schools or in private or parochial schools or other educational institutions providing elementary or secondary education, including any clerical worker of such schools and institutions, who, while in the course of his professional or clerical duties for a guidance counselor, home and school visitor, school nurse or school psychologist, has acquired information from a student in confidence shall be compelled or allowed:
>
> > (1) without the consent of the student, if the student is 18 years of age or over; or
> >
> > (2) without the consent of his parent or guardian, if the student is under the age of 18 years;
>
> to disclose such information in any legal proceeding, trial, or investigation before any government unit.

42 PA.C.S.A § 5945.  It is also clear from the record that the privilege had not been waived.  Segraves fails to provide an iota of evidence that demonstrates that the state willfully or inadvertently suppressed evidence in violation of *Brady.*  Counsel cannot be deemed ineffective for failing to pursue a meritless claim.  Because the underlying otherwise

defaulted ineffective assistance of counsel claim does not meet the "some merit" threshold,

*Martinez* is unavailable to excuse Segraves' procedural default of this claim.

        3.      Ground Four

Respondents also argue that the second argument contained in Ground Four, that

communications between the judge and jury during jury deliberations demonstrate that he

was prejudiced by the trial court's failure to declare a mistrial following the post-jury

selection dismissal of his co-defendant, is procedurally defaulted.  (Doc. 15, pp. 21, 22; Doc.

8, pp. 27-29).  Segraves simply responds in his Traverse that the claim is exhausted.  (Doc.

18, p. 6).

The issue raised on direct appeal was limited to the following:

> Mr. Segraves avers that the lower court abused its discretion by denying his
> motion for mistrial as a result of the District Attorney dismissing charges against
> the co-defendant on the morning of trial. During jury selection, the co-defendant
> and Mr. Segraves' cases were joined and were to be tried together. As a result,
> the Court permitted each defendant to have five preemptory strikes, and
> permitted the District Attorney to have ten strikes. Mr. Segraves had two less
> strikes than he would have had had the Commonwealth dismissed the charges
> against the codefendant prior to jury selection, and the Commonwealth had
> three more strikes than usual. Therefore, the lower court abused its discretion
> by denying Mr. Segraves' motion for mistrial.

(Doc. 17, pp. 142-143; 154-156).  There is no discussion of communications between judge

and jury during jury deliberations.  Nor was the claim raised in any manner during the PCRA

proceedings.

The claim is clearly procedurally defaulted and Segraves does not allege cause or

prejudice. Nor does he allege that lack of review by this court will constitute a fundamental

miscarriage of justice. Consequently, this claim is foreclosed from habeas review.

        4.    Ground Six

Respondents argue that Segraves has procedurally defaulted any federal claim contained in Ground Six because the claim, which was raised in the direct appeal proceedings, is couched in terms of state law violations, not federal law.  A federal habeas court may not consider a petitioner's claims of state law violations; review is limited to issues of federal law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable.").  Moreover, as noted above, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted. *McCandless*, 172 F.3d at 261. "It is not sufficient that all the facts necessary to support the federal claim were before the state courts," *Anderson v. Harless*, 459 U.S. 4, 6 (1982), and "mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

In Ground Six, Segraves specifically claims that the trial court abused its discretion in denying the admission of video evidence and refusing him the opportunity to present character witnesses.  (Doc. 8, p. 40).  It is undisputed that Segraves challenged the

admission of the video tapes and the denial of the opportunity to present character evidence during his direct appeal.  (Doc. 17, pp. 139, 143, 156-159).  However, he failed to give the state courts "fair notice" that he was asserting a federal constitutional claim rather than a claim that the trial court abused its discretion and violated state rules of evidence.  On direct appeal, he devoted approximately four pages of his Superior Court brief to the issue that "[t]he lower court erred by denying [him] the ability to fully present his case and defense." (Doc. 17, p. 156).  He introduces the argument by stating that "[t]he admissibility of evidence is a matter left to the sound discretion of the trial court and that decision will not be reversed absent a showing of abuse of that discretion." *Commonwealth  v. Brewinston,*740 A.2d 247 (Pa. Super. 1999)." *Id.*  He cites Rule 403 of the Pennsylvania Rules of Evidence in arguing that the probative value of the home videos significantly outweighed any prejudice, relevancy, or cumulativeness, and relies on Rule 404 to demonstrate that the lower court abused its discretion by denying him the ability to offer character witnesses at trial to testify as to his reputation for truthfulness in the community, "thereby preventing him from fully presenting his defense." (*Id.* at 156-158).  And he wholly relies on state cases based on state law.  Neither the federal Constitution nor any judicial decision based on the federal Constitution are mentioned in the appellate brief. The state court understood the arguments concerning this evidence to be based on state law and addressed the arguments accordingly.  (Doc. 16, pp. 60-62).

     If a petitioner wishes to claim that an evidentiary ruling at a state court trial denied

him due process, he must say so, not only in federal court, but in state court.  *Duncan*, 513

U.S. at 366.  Because Segraves failed to invoke the federal due process guarantee in the

state court proceedings, his current federal due process claim was not fairly presented to

the Pennsylvania courts.  There is no question that the Pennsylvania courts would not

entertain the claim at this juncture.  Hence, the claim is procedurally defaulted. *See*

*McCandless*, 172 F.3d at 260.  Segraves does not allege cause or prejudice. Nor does he

allege that lack of review by this court will constitute a fundamental miscarriage of justice.

Consequently, habeas review of this claim is foreclosed.

      B.    <u>Claims Adjudicated on the Merits</u>

      The denial of a fair and impartial trial stemming from the non-procedurally defaulted

Juror No.11 claim contained in Ground One, the Ground Two ineffective assistance of trial

counsel claim, the due process claim related to jury selection set forth in Ground Four, and

the trial court abuse of discretion concerning statements made by the prosecutor during

closing arguments in Ground Five, have been fully adjudicated on the merits during the

state court proceedings.

      Under the AEDPA, federal courts reviewing a state prisoner's application for a writ of

habeas corpus may not grant relief "with respect to any claim that was adjudicated on the

merits in State court proceedings" unless the claim (1) "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or (2) "resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt."  *Cullen*, 563 U.S. at 181 (internal quotation marks and citation omitted).  The burden is on Segraves to prove entitlement to the writ.  Id.

Under 28 U.S.C. § 2254(d)(1), a decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The test for § 2254(d)(1)'s "unreasonable application of" clause is as follows: "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519, 520 (2003)). "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous."  *Lockyer v.*

*Andrade*, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 75–76 (quoting *Williams*, 529 U.S. at 411). Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. *Andrade*, 538 U.S. at 75.

The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *See Rice v. Collins*, 546 U.S. 333, 338–339 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' ") (quoting § 2254(e)(1)) (citing *Miller–El v. Dretke*, 545 U.S. 231, 240, (2005)). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. *Cullen*, 563 U.S at 185.

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have

the burden of rebutting the presumption of correctness by clear and convincing evidence."
28 U.S.C. § 2254(e)(1).

1.     Grounds One, Four, and Five

The non-procedurally defaulted claims in Grounds One and Four, and the claims set forth in Ground Five, were adjudicated during the direct appeal process.  The Superior Court of Pennsylvania affirmed the Judgment of Sentence on the basis of "the well-reasoned and thorough May 30, 2012 opinion of the Honorable Marc F. Lovecchio, which incorporates the December 13, 2011 trial court opinion denying [Segraves'] post-sentence motions."  (Doc. 16, p. 68).  Hence, the trial court's "Opinion in Support of Order in Compliance with Rule 1925(a) of the Rules of Appellate Procedure" will primarily govern our analysis of these issues.  We will address each claim in turn.

a.     Ground One.

Segraves claims that the trial court denied him a fair and impartial jury when it denied his motion to dismiss Juror  No. 11, despite the juror's admissions that she was "acquainted" with a friend of B..H.'s stepmother, who was present in the courtroom, and knew B.H.'s stepmother, a witness for the Commonwealth.

According to the record, on the first day of trial, Kilgus, the prosecutor, became aware that Juror No. 11, Amanda  Kramer ("Kramer"), went to high school with Ashley Eyer ("Eyer"), B.H.'s stepmother.  Kilgus immediately brought this to the court's attention.  (Doc. 17, p. 14).  The trial judge questioned Kramer in chambers in the presence of Kilgus and

Rude. (*Id.* at 15).  The judge and both attorneys questioned Kramer.  Kramer indicated that she recognized Amber Poust from high school, a friend of Eyer's who was at the trial to support Eyer and B.H.  Although she recognized Eyer's name, she was not able to put a face to the name. (*Id.*).  She further indicated that she "really didn't have anything to do with them people." (*Id.*).  Rude moved to have the juror excused; Kilgus opposed the motion. The court denied the motion based on Kramer's representation that she had no contact with Eyer, and her assurances that knowing Poust would not impact her ability to be fair and impartial. (*Id.*).

The trial court addressed the issue in the May 30, 2012 opinion:

> Segraves alleges the Court erred by denying his motion to dismiss Juror Number Eleven, when that juror admitted knowing the victim and other witnesses from high school, thereby denying him of a fair and impartial jury.

> This allegation is not entirely accurate. The juror did not know the victim and other witnesses from high school. The juror knew a friend of the victim named Amber Poust, who was present in the courtroom but was not a witness. Ashley Eyer, the victim's stepmother, was a Commonwealth witness whose name the juror was familiar with from high school, but the juror could not put a face with that name and did not really know her, because she was not part of Ms. Eyer's clique. Juror Number Eleven also indicated she could judge Ms. Eyer's testimony the same as everybody else's. N.T., January 19, 201l, at pp. 5l-57.  Based on the juror's answers and demeanor, the Court denied Segraves' motion. *Id.* at 57-58.

> In *Commonwealth v. Koehler*, 558 Pa. 334,737 A.2d225,238 (1999), the Pennsylvania Supreme Court stated: "A challenge for cause should be granted when the juror has such a close relationship, familial, financial, or situational with the parties, counsel, victims or witnesses that the court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions."

> Here, as in *Koehler*, the juror's relationship to the witness was attenuated and the juror testified credibly that her familiarity with the witness would not affect her ability to act impartially. The juror had no relationship with the victim. Therefore, the Court did not abuse its discretion by refusing to remove Juror Number Eleven from the jury.

(Doc. 16, pp. 58, 59).

Under the Sixth and Fourteenth Amendments, a defendant may not be deprived of any liberty without due process of law and in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."). The bias of a juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as a matter of law. *United States v. Wood*, 299 U.S. 123, 133 (1936); *see also United States v. Mitchell*, 690 F.3d 137, 144 (3d Cir. 2012).

The question of actual bias, which is at issue here, is one of fact and best determined by the trial court's own assessment of a juror's impartiality, credibility and demeanor. *See Patton v. Yount*, 467 U.S. 1025, 1038 (1984); *Rosales–Lopez v. United States*, 451 U.S. 182, 188 (1981). If a trial court becomes aware of a possible source of juror bias, due process requires the court to "determine the circumstances, the impact therefore upon the juror, and whether or not it was prejudicial." *Remmer v. United States*, 347 U.S. 227, 230 (1954). This requires the trial court to conduct a hearing to determine what transpired, the impact on the juror, and whether the contact, or cause of the alleged

bias, was prejudicial. *Id.* at 229; *Smith v. Phillips*, 455 U.S. 209, 216 (1982).  Significantly, the United States Constitution does not require a new trial every time a juror has been placed in a potentially compromising situation because it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.  *Smith*, 455 U.S. at 217.

Upon being apprised of the issue of potential actual bias, the trial court immediately convened a hearing in chambers and questioned the juror.  The prosecutor and defense counsel also questioned the juror.  In its opinion, the trial court noted that the juror testified credibly that her familiarity with the witness would not affect her ability to act impartially and indicated that she had no relationship with the victim.  Given the above, it is clear that the manner in which the state court conducted its review is congruous with, and a proper and reasonable application of, the clearly established Supreme Court law applicable to actual juror bias.  The trial court satisfied it obligations under *Remmer* and *Smith.*  Segraves is not entitled to relief on this basis.

The decision also contains a reasonable determination of the facts in light of the state court evidence. Based on the colloquy between the trial judge, the attorneys, and Juror No. 11, there is sufficient support in the record for the state court's conclusion that Juror No. 11 would be impartial.  Segraves simply has not presented the kind of clear and

convincing evidence of bias that is needed to rebut § 2254(e)(1)'s presumption.[6]   Segraves

is not entitled to habeas relief on this claim.

b.     Grounds Four and Five

In Ground Four, Segraves asserts that the trial court erred in denying his motion for

a mistrial based on unfair prejudice during jury selection after the Commonwealth dismissed

the remaining charge against his co-defendant.   (Doc. 8, p. 31).   In Ground Five, he

contends that the trial court abused its discretion in denying a motion for a mistrial as a

result of statements made by the prosecutor during closing arguments which he contends

shifted the burden of proof to the defense.   (Id. at 36, 37).

Pursuant to Supreme Court precedent, trial judges have broad discretion in deciding

whether to grant a mistrial, and "may declare a mistrial whenever, in their opinion, taking all

the circumstances into consideration, there is a 'manifest necessity' for doing so, [ ] but the

power ought to be with the greatest caution, under urgent circumstances, and for very plain

and obvious causes."   Renico v. Lett, 559 U.S. 766, 773–74  (2010).

The Pennsylvania standard of review relied on by the trial court holds that "[i]t is well

settled that the review of a trial court's denial of a motion for a mistrial is limited to

determining whether the trial court abused its discretion. 'An abuse of discretion is not

merely an error of judgment, but if in reaching a conclusion the law is overridden or

---

[6]     Under AEDPA, such factual determinations are "presumed to be correct," 28 U.S.C. § 2254(e)(1), and Segraves bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." Patton, 467 U.S. at 1038; see also Wainwright v. Witt, 469 U.S. 412, 426 (1985).

misapplied, or the judgment exercised is manifestly un-reasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. *Commonwealth v. Chamberlain*, 30 A.2d 381, 422 (Pa. 2011) (citations omitted)." (Doc. 16, p. 56). Further, "[a] trial court may grant a mistrial only 'where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.' A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." (*Id.* at 65, citing *Chamberlain*, 30 A.2d at 422). Because this standard mirrors the standard articulated in *Renico*, the Court concludes that the trial court's decision, adopted by the Pennsylvania Superior Court, was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

As for the "unreasonable application" prong of § 2254(d)(1), "[the] question is not whether the trial judge should have declared a mistrial. It is not even whether it was abuse of discretion for her to have done so ... The question under AEDPA instead is whether the determination of the [state court] that there was no abuse of discretion was an 'unreasonable application of ... clearly established law.'" *Renico*, 559 U.S. at 772–72.

The Ground Four claim implicates Segraves' right to a fair and impartial jury. "The right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial,

'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682; *Tumey v. State of Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749. 'A fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942." *Irvin*, 366 U.S. at 722. And, as noted *supra*, if a trial court becomes aware of juror bias, due process requires the court to conduct a hearing to determine the circumstances, the impact upon the juror, and whether the contact or alleged bias was prejudicial. *Remmer*, 347 U.S. at 229, 230; *Smith*, 455 U.S. at 216.

The trial court provided the following factual background:

> Segraves' co-defendant, his wife Melissa, was charged with endangering the welfare of a child through a course of conduct, a felony of the third degree, and corruption of a minor, a misdemeanor of the first degree, based upon her failure to take adequate measures to protect B.H. from Segraves' sexual assaults, despite being told by a relative that Segraves was molesting B.H. Both Segraves and his co-defendant defended the charges by claiming that B.H. was lying so that she could get out of their house and live with her biological father and that the sexual abuse never happened. The jury in the first trial convicted both of endangering the welfare of a child through a course of conduct, but the jury could not reach a unanimous verdict on any of the other charges.

> At the second jury selection held on or about January 11, 2011, the Commonwealth was still proceeding against both Segraves and his wife. [n.3 In Lycoming County, all jury selections occur during a three-day period approximately one week prior to the start of the trial term. For the January 2011 trial term, jury selections were held January 11-13, 2011.] The Court gave each defendant five peremptory challenges and gave the Commonwealth ten peremptory challenges. By the beginning of trial on January 19, 2011, the Commonwealth elected not to proceed to trial on the remaining misdemeanor charge against Segraves' wife. Segraves did not object to the Commonwealth dropping the charges, but shortly after the Court granted the Commonwealth's

oral motion to *nol pros* that charge, Segraves moved for a mistrial, which the
Court denied. N.T., January 19,2011, at pp. 4-11.

(Doc. 16, pp. 55-56).

In considering the propriety of the jury selection, the state court noted that Segraves'

counsel conceded that Segraves and his wife shared a community of interest and, to that

end, counsel for both defendants were conferring with each other to some extent during jury

selection.  (Doc. 16, p. 57).  The court emphasized that "[a]lthough Segraves would have

had two more peremptory challenges and the Commonwealth would have had three less if

the Commonwealth had dropped the remaining charge against Segraves' co-defendant

prior to jury selection, defense counsel did not point to any juror that he would have stricken

that co-defendant's counsel did not strike." (*Id.*). The court also noted that the community of

interest between Segraves and his wife came with the benefit of a total of ten peremptory

challenges when the defense otherwise would have had only seven peremptory challenges.

With regard to the prosecutor's actions the court observed that "[t]here was no evidence that

the Commonwealth's purpose for dropping the charge was to deprive Segraves of two

peremptory challenges. Instead, it appeared that immediately prior to trial commencing, the

prosecutor came to the realization that there was little point in making the trial more

complex by presenting its case against the co-defendant a second time on a misdemeanor

charge when the prosecutor had already obtained a felony conviction for endangering the

welfare of a child through a course of conduct. *See* N.T., January 19,2011, at p. 11." (*Id.*).

The court concluded that "[i]n light of the logic of the prosecutor's position, the lack of an

35

objection by Segraves when the Commonwealth moved to *nol pros* the corruption charges against his codefendant, and the fact that Segraves did not specify any juror that he would have stricken that co-defendant's counsel did not strike, the Court found a mistrial was neither necessary nor appropriate in this case." (*Id.*).

In light of the above, the Court concludes that the state court reasonably applied clearly established federal law in finding that the trial court did not abuse its discretion in denying Segraves' motion for a mistrial based on the circumstances that unfolded following jury selection.  The decision also constituted a reasonable determination of the facts in light of the evidence of record.

In Ground Five Segraves argues that a comment made by the prosecution during closing argument "mislead the jury in determining who carries the burden of proof in finding if there was sufficient evidence produced at trial to find the defendant guilty or not guilty." (*Id.* at 38).  He cites to *In re Winship*, 397 U.S. 358 (1970), the landmark case in which the Supreme Court made it clear that a criminal conviction will not pass constitutional muster unless the prosecution satisfies this burden completely, stating that "[l]est there remain any doubt about the constitutional stature of the reasonable doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*, at 364. *See Patterson v. New York*, 432 U.S. 197, 210 (1977); *Jackson v. Virginia*, 443 U.S. 307, 315, (1979).

To successfully state a claim for habeas relief based upon comments made by a prosecutor at trial, a petitioner must demonstrate that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (examining a prosecutorial misconduct claim "in light of the record as a whole" in order to determine whether the conduct " 'had [a] substantial and injurious effect or influence' " on the jury's verdict). A court evaluating the appropriateness of prosecutorial remarks should consider if the remarks misstated or manipulated evidence, and whether they implicated other specific rights of the accused, such as the right to counsel or the right to remain silent. *See Darden*, 477 U.S. at 182. Significantly, the concept of "fair response" allows a party to respond to statements made by opposing counsel. *United States v. Robinson*, 485 U.S. 25, 32 (1988).

The state court prefaced its discussion by acknowledging that consideration of the argument was hindered by Segraves' failure to provide the transcript of both parties' closing arguments. (Doc. 16, p. 64). "Without the transcript of both parties' closing arguments, it is difficult to determine if defense counsel's objection was timely or whether the prosecutor's argument was fair comment or response to defense counsel's closing argument. Nevertheless, the Court will endeavor to address this issue based on the sidebar and its recollection of the arguments." (*Id.*). The court recalled that defense counsel argued that the penetrating trauma that Dr. Lewis observed in his examination of B.H. could have been

caused by B.H. having sex with a boyfriend.  In response, the prosecutor "made some comment to the effect of where is the proof that she had sex with anybody else or no one came into court and said they had sex with the victim." (*Id.*).  Defense counsel did not object at the time. Rather, he waited until the prosecutor completed her closing argument to lodge an objection and move for a mistrial. [7]  (*Id.*).

In concluding that a mistrial was not warranted, the state court cited the following: "First, it appears that the prosecutor's arguments were a fair response to defense counsel's closing argument.  Second, the Court believes the prosecutor indicated she did not mean to imply that the defendant had any burden of proof when she made the argument. Finally, the Court, in its charge to the jury, instructed the jurors that: the defendant is presumed innocent; the accused does not have to prove anything; the Commonwealth always has the burden to prove each element of the crime charged beyond a reasonable doubt; the speeches of counsel are not evidence; and the jury's finding must have a sold [sic] basis in the evidence. N.T., January 20, 2011, at pp. 108, 110, I 12-113.  Moreover, the prosecutor's comments were not designed to encourage bias or hostility toward Segraves, but to implore the jury to base its verdict on the evidence presented in the courtroom."

The state court's disposition of the claim is not an unreasonable application of the Supreme Court precedent.  The court noted that the comment was a fair response to a

---

[7]   Notably, Segraves' direct appeal brief, filed on September 26, 2012, did not take issue with the trial court's recollection or its characterization of the comment made by defense counsel or the prosecutor's response. (Doc. 17, pp. 160-162).

comment made during defense counsel's closing statement.  The court examined the propriety of the comment, and considered whether the remark misstated or manipulated evidence, and whether it implicated other specific rights of the accused. *See Darden*, 477 U.S. at 182.  Further the court provided pertinent curative instructions including that the defendant is presumed innocent, that he does not have to prove anything, that the Commonwealth always has the burden to prove each element of the crime charged beyond a reasonable doubt, that counsels' speeches are not evidence, and that the jury's finding must solidly be based in evidence.  The jury is presumed to have followed the court's explicit instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

Based on the foregoing discussion, the Court concludes that in denying the motion for a mistrial, the state court decision reasonably applied applicable Supreme Court precedent.  It also constituted a reasonable determination of the facts in light of the evidence presented.  Segraves is not entitled to relief on this claim.

2.      Ground Two

In Ground Two, Segraves presents the question of whether trial counsel was ineffective in failing to call witness M.M. to the stand. This claim was fully adjudicated during the PCRA proceedings.

The Superior Court set forth the following standards of review in considering the ineffective assistance of counsel claim:

> We begin by noting that the law presumes that counsel has rendered effective assistance. *See Commonwealth v. Harris*, 852 A.2d 1168, l173.  (Pa. 2004).

> In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). When considering such a claim, courts presume that counsel was effective, and place upon the [petitioner] the burden of proving otherwise. Counsel cannot be found ineffective for failure to assert a baseless claim.

> To succeed on a claim that counsel was ineffective, [the petitioner] must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him.

> Furthermore:
>  [t]o demonstrate prejudice, [the petitioner] must show there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. When it is clear the party asserting an ineffectiveness claim has failed to meet the prejudice prong of the ineffectiveness test, the claim may be dismissed on that basis alone[.]

*Commonwealth v. Michaud*, 70 A.3d 862, 867 (Pa. Super. 2013) (case citations and some quotation marks omitted). "Failure to establish any prong of the test will defeat an ineffectiveness claim." *Commonwealth v. Birdsong*, 24 A.3d 319, 329 (Pa. 2011) (citations omitted).

(Doc. 16, pp. 111, 112).

The clearly established Federal law governing ineffective assistance of counsel claims, as determined by the Supreme Court of the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Shelton v. Carroll*, 464 F.3d 423, 438 (3d Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." *Williams*, 529 U.S. at 391, 120 S.Ct. 1495. Under *Strickland*, a habeas petitioner must

demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688, 104 S.Ct. 2052. This review is deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....

Id. at 689, 104 S.Ct. 2052.

> Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." Id. at 691, 104 S.Ct. 2052. "Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. Id. at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

> In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696, 104 S.Ct. 2052.

Rainey v. Varner, 603 F.3d 189, 197–98 (3d Cir. 2010). The Third Circuit has specifically

held that the ineffectiveness assistance of counsel test relied upon by the state court in this

matter, which includes an assessment of the merits of the underlying claim, is not contrary

to the Supreme Court's *Strickland* standard.  *See Werts v. Vaughn*, 228 F.3d 178, 203, 204

(3d Cir. 2000).  Segraves does not argue otherwise.

Rather, he asserts that the Superior Court's decision on the issue of whether he was

prejudiced by trial counsel's failure to present the testimony of M.M. at trial, resulted in an

"unreasonable application/determination of both law and facts."  (Doc. 8, pp. 17-27; Doc. 18,

p. 5).  Applying appropriate AEDPA deference, we must assess whether, even assuming

counsel's performance was deficient, the Superior Court's decision that Segraves did not

suffer prejudice " 'involved an unreasonable application of' such law," *Richter*, 562 U.S. at

100 (quoting 28 U.S.C. § 2254(d)(1)), an assessment that requires us to examine whether

he has shown "that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different," with "a reasonable

probability" meaning "a probability sufficient to undermine confidence in the outcome,"

*Strickland*, 466 U.S. at 694.  Since *Strickland*, the United States Supreme Court has

repeatedly emphasized the necessity of assessing an ineffectiveness claim in light of all the

circumstances. *See Wiggins*, 539 U.S. at 533; *Roe v. Flores–Ortega*, 528 U.S. 470, 478

(2000); *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  Notably, when assessing

prejudice, "a court hearing an ineffectiveness claim must consider the totality of the

evidence before the judge or jury."  *Strickland*, 466 U.S. at 695; *see Williams*, 529 U.S. at

398 (describing state prejudice determination as unreasonable for failing to evaluate the

totality of the evidence).

By way of background, at Segrave's first trial, B.H. testified that she told M.M. about the sexual abuse. (Doc. 16, p. 109).  After the first trial, while being interviewed by M.S.'s attorney, Gregory Scott Gardner, Esq. ("Gardner"), M.M. indicated that B.H. did not tell her about the abuse.  (*Id.*).  At the second trial, B.H. again testified that when she was approximately eleven years old, while riding on the school bus, she told M.M. that Segraves was molesting her.  (*Id.*).  Rude did not call M.M. to testify as a witness during the second trial.  (*Id.*).  During PCRA proceedings, Segraves claimed that Rude's failure to call M.M. at the second trial constituted ineffective assistance of counsel.  The PCRA court held a hearing at which Gardner, Rude, and M.M. testified. "Gardner explained that, in preparation for the second trial, he and Rude discussed strategies and split up work with respect to defense witnesses. (*See* N.T. PCRA Hearing, 12/09/14, at 7). When the remaining charge against M.S. *was nol prossed*, he advised Rude that M.M. was under subpoena and that he should call her as a witness. (*See id.* at 6-7). Rude testified that he recalled discussing M.M. as a potential witness with Gardner; that he believed M.M.'s testimony would be significant to undermine B.H.'s credibility; and that he made a mistake in not calling her as a witness. (*See id.* at 16, 18-21). M.M. testified consistent with her prior interview that she was friends with B.H. during elementary and middle school, and that B.H. did not tell her about the abuse.  (*See id.* at 28-30, 32). She also acknowledged that the school bus tended to be very noisy with children carrying on multiple conversations at the same time, and that it is possible that B.H. said something to her that she did not hear. (*See id.* at 33-34)." (Doc. 16,

pp. 109,110).  The PCRA court concluded that counsel was ineffective in not calling M.M., and granted relief in the form of awarding Segraves a new trial on all charges, except the endangering welfare of a child conviction secured in the first trial.  (Id. at 104).

In reversing the PCRA court's decision, the Superior Court set forth the following:

> Here, the testimony at the PCRA hearing established that the issue of M.M. as a useful defense witness has arguable merit, and that Rude conceded he lacked a reasonable strategic basis for not calling her. (*See* N.T. PCRA Hearing, at 5-6, 16, 18, 20); *see also Michaud, supra* at 867.  It is also apparent from the record that M.M. existed and was available to testify, that Rude was aware of her as a potential witness, and that she was willing and able to appear. (*See* N.T. PCRA Hearing, at 6-7,16, 30); *see also Chmiel, supra* at 1143. Accordingly, we must determine whether M.M.'s testimony was necessary in order to avoid prejudice to Appellee. *See Chmiel, supra* at 1143; *Michaud, supra* at 867. After review, we conclude that her testimony was not necessary to avoid prejudice, and that the Commonwealth's issue on appeal merits relief.
>
> First, the record reflects that the Commonwealth presented compelling evidence of Appellee's guilt. specifically, B.H. testified extensively regarding Appellee's sexual abuse over a two-year period beginning when she was eleven years old, which progressed from rubbing against her to sexual intercourse, with the duration of the episodes increasing over time. (*See* N.T. Trial, 1/19/11, at 42-45, 58-59), Appellee had sexual intercourse with her two to three times per month and performed oral sex on her on four or five occasions. (*See id.* at 48-49). Appellee permitted B.H. to participate in social activities with her friends only if she cooperated with him sexually; otherwise, he did not allow her to leave the home. (*See id.* at 47-48; 68-69). He separated B.H. from her siblings and called her disparaging names in their presence if she refused to cooperate, and he waited until other family members were asleep or out of the home to abuse her sexually. (*See id.* at 47 -50). Appellee continued to have sexual intercourse with her until she told her math teacher about the abuse, and her teacher notified the authorities. (*See id.* at 42, 48,50, 66, 113).
>
> B.H.'s testimony was corroborated by that of Dr. Kathleen Lewis, an expert in the field of child sexual assault physical examination. (*See id.* at 188-89). Dr. Lewis testified that she examined B.H, in February 2008, when B.H.

was thirteen years old, and observed that she had sustained a significant vaginal injury consistent with someone having penetrating intercourse with her. (*See id.* at 193, 198-200, 211). Dr. Lewis opined that this injury was attributable to the sexual abuse because B.H. had "no history in the past of [] falling on a pipe that went up into her. [or] [o]f her having been in any kind of a significant automobile accident where she may have had a crush injury to the pelvis that may have caused the tear." (*Id.* at 199-200). At sentencing, the trial court emphasized the significance of Dr. Lewis's testimony regarding B.H.'s physical injury, and described the evidence of Appellee's guilt as "overwhelming" (N.T. Sentencing, 6/30/l1, at 65; *see id.* at 64). The record therefore reflects that the Commonwealth presented ample evidence of Appellee's guilt.

Second, M.M.'s proffered testimony that B.H. did not tell her about the abuse would have been used by the defense at trial solely to impeach B.H's credibility. (*See* N.T. PCRA Hearing, at 16, 19-20). However, Rude acknowledged that he used other means of impeaching B.H.'s credibility, by presenting evidence of her motive for fabricating the allegations and pointing out inconsistencies in her testimony. *(See id.* at 19,21). At trial, Rude cross-examined B.H. at length regarding the restrictions at M.S.'s house, the fact that she was routinely getting into trouble at school, her desire to live with her biological father, and her delay in reporting the abuse to her father or anyone else. (*See* N.T Trial, 1/19/11, at 81, 84-88, 90-97, 99-109). Although Rude neglected to call M.M. as a witness, he did point out to the jury during closing argument that M.M. had never testified in support of B.H. (*See* PCRA Ct. Op., 1/21/15, at 7; Commonwealth's Brief, at 10, 15; Appellee's Brief, at 7-9, 14). Additionally, the trial court gave the jury a failure to make prompt complaint charge, instructing that it should consider B.H.'s delay in reporting the abuse ln evaluating the reliability of her testimony. (*See* N.T Trial, 1/20/11, at 99-100, 118-19). Given this record, M.M.'s testimony regarding an incident that she disputes or does not remember took place when she was eleven years old on a school bus would have added little with respect to evaluating B.H.'s credibility.

Based on the foregoing, we conclude that the PCRA court erred as a matter of law by granting Appellee a new trial based on ineffective assistance of trial counsel. *See Williams, supra* at 1239. While Rude could, and probably should, have attempted further to impeach B.H.'s credibility by calling M.M. as a witness, a review of the record makes clear that he made sustained, strenuous efforts to undermine B.H.'s credibility during trial by highlighting her motive to lie, inconsistencies in the testimony and her delay in reporting the abuse. The jury obviously believed B.H.'s testimony, which was strongly

supported by medical expert testimony, and, shortly after trial, the sentencing court described the evidence of Appellee's guilt as "overwhelming." Thus, we conclude that Appellee has failed to demonstrate prejudice, and has not met his burden of establishing that any failing on counsel's part "in the circumstances of [this] particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii); *see also Michaud, supra* at 867. Therefore, the Commonwealth's issue on appeal merits relief. Accordingly, we reverse the order of the PCRA court.

(Doc. 11, pp. 112-116) (footnotes omitted).

To reiterate, when considering the prejudice prong of *Strickland*, a court must evaluate the effect of counsel's inadequate performance in light of the totality of evidence. We do not inquire as to whether we "believe[ ] the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted) (internal quotation marks omitted). Here, in evaluating prejudice, the Superior Court considered the totality of the available evidence—both presented at trial and at the PCRA hearing. On the whole, it is clear that the Superior Court's prejudice analysis reflected a reasonable application of "clearly established" federal law, *see Richter*, 562 U.S. at 101; *Jacobs*, 395 F.3d at 106. It was also a reasonable determination of the facts in light of the evidence presented. Accordingly, Segraves is not entitled to relief on this claim.

## VI.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding

under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Segraves fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Segraves from appealing the order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b)(1).

VII.   <u>Conclusion</u>

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

A separate Order shall issue.

Dated: April 24, 2020                     _s/ *Robert D. Mariani*_____
                                          Robert D. Mariani
                                          United States District Judge